Hemphill, Ch. J.
That the gift took effect and vested title to the property in the wife, as (he donee, according to the laws of Texas, and not those of Tennessee, regulating marital rights, has not been questioned in this court, and the only point for examination is the legal effect of the want of registration of this properly in the county where the wife lived upon her rights as against the -creditors of her husband. This has been discussed in the argument, as if the properly had been acquired by the wife after the adoption of the Constitution of the Slate, and as consequently affected by the provisions and laws on the subject, of registration of the wife’s separate property passed in pursuance thereof. The fact, however, upon which the argument is predicated fails, and the positions assumed are consequently not entirely applicable to the case before the. court. The right of the wife to the slave is founded upon the law of 1840. Her title had vested fully and completely before the adoption of the constitutional provision or of the act of registration. But as the law authorizes women who were then as well as those who were thereafter to be married to register their separate property, it may be admitted, so far as this case can be .affected, that the want of registration .has the like legal effect upon the wife’s separate estate acquired before as after the passage of the law.
To a proper determination of the question it will be necessary to have a just perception of the quality or character of the estate which a wife under the law has in her separate property. At common law she had no separate estate. Her capacity to hold property in her own separate right and even her legal existence were merged by the coverture in that of the husband. But these principles and rules of law, so far as they affect the capacity of the wife to hold property in her separate right, are not only disregarded, but totally expunged from our code of jurisprudence, and in an investigation of the rights of the wife must be altogether discarded from consideration. The law declares and the Constitution guarantees that all property owned or claimed by the wife before marriage, and that acquired afterwards by gift, devise, or descent, shall be her separate property. Her capacity to hold property separate and apart from her husband is as complete and perfect as that of the husband to hold in his own right separate and apart from his wife. There is none, not the slightest difference in this particular between their civil rights and .capacities. The right of the feme covert to hold her separate estate is as perfect as if she were a feme sole. She loses many of her civil rights by marriage, but her power to take and hold, separate property is not impaired by force of the coverture. It is true that the law has deemed it sound policy and beneficial to the interests of the wife that certain onerous restrictions should be imposed upon her ability to deal with her estate as a feme sole. But this does not affect her right to hold the property, but rather the reverse. They were designed to protect that right, and to preserve the wife from yielding to undue influences in the voluntary alienation of her property. And if it be shielded from her voluntary dispositions, a fortiori it would be protected .against the debts, engagements, or contracts, of her husband, unless made for the benefit of such estate, or under certain circumstances for the support of the wife and her familjL
It being then extremely clear that the right of the wife to her property is as full and perfect as that of the husband to his, let us examine the effect of .registration on the rights of the wife in her separate estate. The 19th *184 section of the Constitution declares that all property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired after-wards by gift, devise, or descent, shall he her separate property, and laws shall he passed more clearly defining the rights of the wife in relation as well to her separate property as to that held in common with her.husband. Laws also shall be passed providing for the registration of the wife’s separate property.
There arc some portions of this section that might, if occasion-offered, be very properly the subject of explanation; for instance, laws are required to be passed defining more clearly the rights of the wife in relation as well to her separate property as to' that held in community. This cannot, in any degree have, been intended to abridge the rights of the wife in her separate estate. This provision of the Constitution and the previous statute had abolished all the rules of the common law regulating marital rights so far as they affected the right of the wife to hold a separate estate qr the quality of her title. The husband, and wife held nearly the same interests or rights in property that they were entitled to under the Spanish system of jurisprudence; but the regulations by which their respective estates were controlled had been swept out of existence ; none were provided by the common law as a substitute; for such rights were not at all onto but a limited extent recognized under that system without the. modifications of equity; and that neither at law nor equity had the community estate ever been known, recognized, or regulated. Under such circumstances it was not strange that the Constitution should require the adoption of' laws defining more clearly the rights of the wife to botli her separate and the community property.
But waiving further inquiry as to that provision, and coming to the question! more immediately under consideration, it seems that the Constitution required that .laws should also be passed providing for the registration of the wife’s separate, property. But no penalty was declared in case of failure or neglect of the wife to avail herself of this right or the performance of this duty ; nor has the law declared any penalty in case of such failure; nor does the Legislature possess any constitutional power to declare that the title of the wife to her property shall be.divested for the want of registration, nor that for that reason it Shall be subjected to the debts'of her husband or of any other person whomsoever. She holds her property in her separate right, under the guarantees and immunities of the Constitution, with a title as perfect and as complete as can be held by any individual to property under the laws of the land, and she is protected from the operation of all those rules and principles-of the common law which vest her property in the husband or which raise the presumption that it is so vested, unless by a marriage contract or some instrument in writing, duly recorded, it is proved to be otherwise. There is no presumption that property in possession of a conjugal partnership belongs to the husband rather than to the wife. Where the matrimonial union has continued for any considerable period, the presumption is strong that the property belongs to the common stock of acquests and gains, and therefore liable for the debts of the husband contracted during marriage or for those of the wife for necessaries during the same time; and it becomes important to the rights of the wife that she should avail herself of,the privileges afforded her under the laws of registration. But the presumption that the property belongs to the. community is not, however, conclusive, but may he rebutted by proof to the contrary. The want of registration may involve the proof in some difficulty, but any competent; evidence to show title m the wife is admissible for that purpose. ,
The prima facia presumption in this case was that the property belonged to the community estate. The servant had been purchased by the husband, and this vested title in the community; but the proof is satisfactory that this title had been divested by sale under execution, and that the wife had, *185 acquired her title by gift from a third person. There is no proof that the wife had acknowledged that the slave belonged to the husband, or that by her act she induced the creditor to trust him; and no question arises as to how far the fraudulent conduct of a wife might involve her property in liability. The fact that there was no deed of gift or that the gift was by delivery is an immaterial circumstance. If there be fraud in the conveyance to the wife, such as would under the statutes regulating fraudulent conveyances avoid the-gift, this could be taken advantage of only by the creditors and purchasers of the doner, and not those of the' husband. His right has been divested by a bona fide sale under execution, and no question of fraud could bo raised as against the husband. But there was no legal or actual fraud in the transaction. The slave was purchased by an uncle of the wife. The gift to her was founded on a meritorious consideration, and possession accompanied the gift.
We are of opinion that the charge of the judge below was correct; that a failure on the part of the wife to register her separate property does not divest or change the character of her title thereto, but only imposes upon her the necessity of proving her title by some other evidence; and there being no error in the judgment of the court below, it is ordered that the same be affirmed.
Judgment affirmed.